# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LYDIA M.**[1], | Case No. 6:19-cv-396-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Robyn M. Rebers, ROBYN M. REBERS, LLC, PO Box 3530, Wilsonville, OR 97070. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Heather Griffith, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Lydia M. brings this action pursuant to § 205(g) of the Social Security Act ("the

Act"), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's application for child disability benefits and supplemental security income ("SSI") benefits under Titles II and XVI of the Act. For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff protectively filed applications for Social Security Child Disability and Supplemental Security Income benefits on September 15, 2015, alleging a disability onset date of June 28, 2013. AR 20. She was found not disabled by Administrative Law Judge (ALJ) John Michaelsen in a decision dated June 12, 2018. AR 17. The Appeals Council declined review of that decision, making the ALJ's decision the Commissioner's final decision. AR 1. Plaintiff timely appealed the final decision of the Commissioner to the United States District Court. Plaintiff was born on June 28, 1995, making her 18 years old as of the alleged disability onset date. AR 65.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the date of alleged disability onset. AR 22-23. At step two, the

ALJ found that Plaintiff has the following severe impairments: neurocognitive disorder, attention

deficit hyperactivity disorder ("ADHD"), learning disorder, anxiety disorder, and asthma. AR 23.

At step three, the ALJ determined that Plaintiff does not have an impairment that meets or

medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

AR 23-24.

At step four, the ALJ calculated Plaintiff's RFC and found that Plaintiff could perform a

full range of work at all exertional levels, but with the following limitations:

> the claimant is limited to occasional climbing. The claimant would
> need to avoid concentrated exposure to unprotected heights,
> moving machinery, and similar hazards. The claimant would need
> to avoid all exposure to dusts, fumes, gases, poor ventilation, and
> other noxious odors. The claimant is further limited to simple,
> routine, repetitive tasks, requiring no more than brief, superficial
> contact with the general public.

AR 25-30. Because Plaintiff has no past relevant work, the ALJ proceeded to step five, where he found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the following jobs that exist in significant numbers in the national economy: laundry worker, store laborer, and dry cleaner helper. AR 31.

## DISCUSSION

Plaintiff alleges that the ALJ committed four legal errors that merit reversal of the ALJ's decision. First, Plaintiff argues that the ALJ's RFC calculation was unsupported by substantial evidence because the ALJ failed to include the limitations justified by Dr. Peter LeBray's opinion. Next, Plaintiff alleges that the ALJ improperly weighed the opinion of Dr. Charity Benham and rejected it without providing specific and legitimate reasons for doing so. Third, Plaintiff faults the ALJ for failing to provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony. Lastly, Plaintiff contends that the ALJ failed to provide germane reasons for rejecting the witness statements of the DHS disability eligibility specialists, Plaintiff's mother Sheryl M., and vocational rehabilitation counselor Alice Pangburn.

## A. Opinion of Dr. Peter LeBray

Plaintiff contends that the ALJ erred in calculating the RFC because he did not include the limitations in Dr. LeBray's opinion, to which the ALJ gave significant weight. The ALJ explained in his opinion that he did not believe Dr. LeBray's findings supported a conclusion that Plaintiff would need significant work accommodations to maintain employment. The ALJ pointed to Dr. LeBray's testing that showed Plaintiff scored in the low average intellectual functioning range on a series of tests. He also pointed to Dr. LeBray's observation of "fairly normal" mental status.

Plaintiff emphasizes the portion of Dr. LeBray's opinion in which he suggests that Plaintiff required "reasonable supports and accommodations in all vocational training or

schooling programs." AR 453. Plaintiff alleges that the ALJ ignored the 'support and accommodation' limitation in Dr. LeBray's opinion, but the ALJ explained why he came to an alternate conclusion. Namely, Dr. LeBray also expressed a view that Plaintiff could successfully complete "some kind" of certificate program that would allow her to move toward her goal of becoming a preschool teacher. Further, Dr. LeBray stated that Plaintiff would "fare best with simpler to semi-complex, familiar routine tasks not requiring high literacy demands, memory challenges or speeded visuo-motor requirements," from which the ALJ concluded that Plaintiff was able to perform simple, routine, and repetitive tasks. AR 28.

Plaintiff has provided an alternative interpretation of Dr. LeBray's report, and suggests it showed that she needed additional accommodations. Her interpretation cannot justify overturning the ALJ's decision on this point. When there is substantial evidence to support the ALJ's interpretation of the medical evidence and that interpretation is based on the correct legal standards, it should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). The ALJ provided a sufficient explanation for his decision not to include the accommodation limitation Plaintiff urges, and his decision was supported by substantial evidence.

## B. Opinion of Dr. Charity Benham

Dr. Charity Benham, Psy.D. examined Plaintiff in December 2015. The evaluation revealed neurodevelopmental disorder secondary to fetal alcohol syndrome, PTSD, and adjustment disorder with mixed anxiety and depressed mood. AR 28. The examination showed "showed well-groomed appearance, appropriate and clean dressing, polite and appropriate behavior, anxious mood, constricted affect, somewhat immature judgment, very little insight, she had no suicidal ideations, hallucinations, or homicidal ideations." *Id*.

Dr. Benham stated that Plaintiff should receive services and support as an individual with

developmental disability. The ALJ assigned little weight to this statement, however, because

Dr. Benham

> did not specify the type, degree, and severity of the claiman''s
> work limitations. The word developmental disability [that
> Dr. Benham] used is vague. She did not provide the appropriate
> explanation and clinical findings to support the disability she was
> referring to. [Dr. Benham] did not even indicate what the claimant
> could do or could not do. The adaptive functioning deficits [that
> Dr. Benham] indicated does not match with the claimant's
> substantial daily activities she reported at Exhibit 4E and at the
> hearing.

AR 28. The ALJ concluded that Plaintiff could perform simple tasks.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes

between the opinions of three types of physicians: treating physicians, examining physicians, and

non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a

treating physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a reviewing physician's." *Holohan v.*

*Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by

medically acceptable techniques and is not inconsistent with other substantial evidence in the

record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R.

§ 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another

physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc.*

*Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the

opinion of another physician, the ALJ must provide "specific and legitimate reasons" for

discrediting the treating doctor's opinion. *Id.*

PAGE 8 – OPINION AND ORDER

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

The ALJ here provided specific and legitimate reasons for rejecting Dr. Benham's opinion. Dr. Benham was an examining physician whose opinion that Plaintiff was disabled was contradicted by Dr. Labray. The ALJ thus must provide specific and legitimate reasons for rejecting that opinion. The ALJ rejected Dr. Benham's opinion because it did not specify the type, degree, and severity of Plaintiff's work limitations; because the term "developmental disability" that Dr. Benham used was vague; because Dr. Benham did not provide sufficient explanation and clinical findings to support her conclusion; because Dr. Benham did not say what Plaintiff could or could not do; and because the adaptive functioning deficits that Dr. Benham indicated did not match Plaintiff's daily activities.

Plaintiff argues that these reasons are not specific and legitimate. First, Plaintiff says that Dr. Benham's opinion did not specify the type, degree, and severity of Plaintiff's work limitations because the purpose of the examination was to determine Plaintiff's eligibilty for county services, not her ability to work. Next, Plaintiff contends that "developmental disability" is not vague because Oregon law gives a detailed definition of the term. Plaintiff then faults the ALJ for citing Dr. Benham's failure to provide an appropriate explanation and clinical findings to support her conclusion. Plaintiff notes that Dr. Benham reviewed Plaintiff's medical records, administered testing, and concluded that there was sufficient documentation of fetal alcohol syndrome and long-standing difficulties in cognitive development. Plaintiff also contends the ALJ's complaint that Dr. Benham's opinion did not state what Plaintiff "could do or could not do" is not specific and legitimate because it does not identify what information the ALJ felt was lacking. Lastly, Plaintiff objects to the ALJ's conclusion that Dr. Benham's opinion was inconsistent with Plaintiff's daily activities because the ALJ does not identify which activities were inconsistent or how they were inconsistent with disability.

Although Plaintiff raises reasonable concerns with the specificity and legitimacy of some of the ALJ's reasons for rejecting Dr. Benham's opinion, the five provided reasons, viewed together, suffice to justify the ALJ's conclusion. In particular, Dr. Benham's failure to address the scope of work limitations and the inconsistency of the opinion with Plaintiff's daily activities are a sufficient basis for the ALJ's action.

Plaintiff's argument that Dr. Benham was not evaluating Plaintiff's ability to work explains why Dr. Benham's opinion did not address Plaintiff's work limitations. It does nothing, however, to undermine the ALJ's conclusion that Dr. Benham's opinion was not relevant to determining whether Plaintiff could work. The ALJ reasonably decided that Dr. Benham's opinion that the government should provide Plaintiff with certain services afforded to disabled people is not equivalent to a conclusion that Plaintiff cannot perform any job in the national economy.

The ALJ's failure to specify which of Plaintiff's daily activities were inconsistent with Dr. Benham's opinion is understandable when the ALJ's opinion is viewed as a whole. The portion of Dr. Benham's opinion at issue is her view that Plaintiff is disabled. Earlier in the opinion, the ALJ discounted Plaintiff's testimony that she is totally disabled because it, too, was inconsistent with Plaintiff's daily activities. The ALJ provided a lengthy recitation of Plaintiff's activities and reasonably concluded that these activities conflicted with Plaintiff's claim to be unable to perform any job in the national economy. Plaintiff does not explain why this discussion does not apply equally to the ALJ's conclusion that Plaintiff's activities were incompatible with Dr. Benham's belief that Plaintiff is disabled. Viewed in this light, the ALJ's rejection of Dr. Benham's opinion based on Plaintiff's activities was specific and legitimate and not legal error.

## C. Plaintiff's Testimony

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were inconsistent with Plaintiff's activities of daily living and the objective medical evidence. AR 25. A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 1.  Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations

to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ discounted Plaintiff's testimony that she is totally disabled because Plaintiff's daily activities show that she can understand, remember, and carry out tasks; can understand and follow instructions; and has sufficient attention, concentration, persistence, and memory to carry out simple tasks. AR 26. The ALJ cited the fact that Plaintiff was able to acquire a learner's permit, makes and posts videos to YouTube, plays games and shops online, scrapbooks, bakes, cooks meals, writes poems, does dishes, and vacuums as evidence that Plaintiff is able to perform at least *some* job in the national economy. This reason, considered with the ALJ's reason that the testimony was inconsistent with the objective medical evidence, suffices as a clear and convincing reason for discounting Plaintiff's testimony.

### 2. Objective Medical Evidence

The ALJ also found that the medical evidence undercut the severity of Plaintiff's alleged panic attacks, noting that Plaintiff admitted that counseling and therapy help manage her symptoms. The ALJ stated that the medical record did not support Plaintiff's claim of frequent panic attacks and that Plaintiff never visited the emergency room for a panic attack. In particular, the ALJ felt that Plaintiff exaggerated the severity of her panic attacks because Plaintiff's mother suggested that she felt asthma was Plaintiff's most serious malady, and the ALJ determined that Plaintiff's asthma was not disabling. The ALJ characterized Plaintiff's mental health treatment as routine. Plaintiff never met with a psychologist or clinical therapist, and her counseling sessions

consisted mostly of the counselor listening to Plaintiff's problems, validating her feelings, and teaching her coping mechanisms. The counselor described Plaintiff in notes as "pleasant and cooperative but would get fidgety when nervous." Other notes "consistently showed normal appearance, average eye contact, cooperative attitude, normal activity, euthymic mood, full orientation, normal judgment, clear speech, normal insight, normal cognition, average intelligence, logical thought process, and normal perception" and "no hallucinations, delusions, or suicidal ideations" and at times no concerns at all.

Finally, the ALJ pointed to Dr. Peter Labray's evaluation as undermining Plaintiff's claim to be totally disabled. Although Dr. Labray opined that Plaintiff "would need significant work accommodations in order to obtain and maintain work," the ALJ disagreed that Dr. Labray's findings demanded such a conclusion. AR 27. While acknowledging Dr. Labray's finding that Plaintiff could not perform any math more complicated than addition and subtraction, the ALJ determined that on the whole, Dr. Labray's findings "were consistent with low average intellectual functioning" and suggested that Plaintiff could perform simple tasks and function without vocational support. *Id.* The ALJ wrote:

> The examination showed mildly anxious mood, alert, coherent, and responsive behavior, intelligible speech, pleasant affect, good effort, adequate pace and persistence, low average immediate attention span, moderately deficient immediate auditory verbal recall, mildly deficient visual recall, and average serial word recall. The testing showed fair spelling, composition, and punctuation use as well as poor math skills. The testing showed no delusions, hallucinations, distorted thinking, or bizarre association.

*Id.* The ALJ concluded that this finding was consistent with Plaintiff's ability to perform simple, routine, and repetitive tasks. The reasons the ALJ provided for discounting Plaintiff's symptom testimony, taken together, constitute clear and convincing reasons, and the ALJ did not commit legal error.

**D. Witness Statements**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

1.  **DHS Eligibility Specialists**

The ALJ assigned little weight to the DHS developmental disability eligibility

determination

> because the documents were prepared based on the claimant's
> subjective complaints. The sources are not qualified physicians and
> do not have the qualifications to form an opinion. The reports do
> not reflect the degree and type of functional limitations of the
> claimant. Such reports are inconsistent with the objective findings
> and the claimant's substantial daily activities she reported at
> various times. Most importantly, a decision by any other
> nongovernmental agency or other governmental agency about
> disability or blindness is based on that agency's rules and is not
> binding on the Social Security Administration.

AR 30. Plaintiff contends that these reasons are not germane and the ALJ inappropriately

rejected the DHS disability determination.

First, Plaintiff argues that the DHS determination was based on treatment records and

objective medical evidence, not Plaintiff's symptom testimony. Next, she contends that the

individuals making the determination do not need qualifications to provide lay testimony, and

rejection on this basis is not germane. Third, she argues that the mere fact that the DHS disability

determination is not binding on the SSA is not a germane reason to reject it. Plaintiff does not

discuss two other reasons the ALJ provided, however: that the determination was inconsistent

with Plaintiff's daily activities and that the determination does not reflect the degree and type of

Plaintiff's functional limitations.

The reasons that the ALJ provided for rejecting the DHS disability determination are

germane, particularly the reasons that Plaintiff does not address in her brief. As explained above,

the ALJ reasonably rejected other evidence because of its inconsistency with Plaintiff's daily

activities. Inconsistency with daily activities is a germane reason for discounting the weight

given to the DHS determination. Furthermore, the ALJ reasonably found the DHS determination

less relevant to Plaintiff's capacity to work because of the determination's lack of specificity about the scope of Plaintiff's limitations. The ALJ committed no legal error in rejecting the DHS eligibility specialists' statements.

### 2. Sheryl M.

The ALJ discounted the lay witness testimony of Plaintiff's mother, Sheryl M., explaining that her statement was not fully consistent with Plaintiff's daily activities, Dr. LeBray's findings, and Plaintiff's medical treatment records. Plaintiff contends that these reasons are not germane because she disagrees with the ALJ's assertion: Plaintiff believes that Ms. M.'s statement is in fact consistent with the record. Although Plaintiff provides a plausible way to read Ms. M.'s statement as consistent with the rest of the record, Plaintiff does not explain convincingly that the ALJ's determination was unreasonable and thus not germane. The ALJ pointed to the same activities of daily living that he appropriately found undermined Plaintiff's own testimony. He also cited medical records that, for example, described Plaintiff as a "generally healthy individual" and her asthma to be "fairly controlled," as a basis for discounting Ms. M.'s statement that Plaintiff cannot even talk for more than 30 minutes or walk for more than 10 minutes. The reasons the ALJ provided for rejecting Ms. M.'s testimony are germane, and the ALJ did not commit legal error.

### 3. Alice Pangburn

The ALJ's decision does not address the statement of Alice Pangburn, a DHS vocational rehabilitation counselor who worked with Plaintiff. Ms. Pangburn provided a letter observing that Plaintiff exhibited symptoms consistent with someone on the autism spectrum. Ms. Pangburn opined that Plaintiff would need significant support, like a job coach, in order to maintain employment successfully. Plaintiff contends that Ms. Pangburn's experience as a vocational rehabilitation counselor makes her testimony particularly relevant to whether Plaintiff

can work, and the ALJ's failure to provide a reason for rejecting Ms. Pangburn's letter was legal error. The Commissioner responds that the error was harmless because the letter does not describe any limitations beyond what Plaintiff herself described.

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error but should determine whether there was prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially include, among others:

> an estimation of the likelihood that the result would have been different, an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere

probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

The failure to address Ms. Pangburn's testimony is legal error, and the Commissioner's argument that the error was harmless is unconvincing. In support of this argument, the Commissioner cites the Ninth Circuit's opinion in *Molina*, in which the Court found an ALJ's failure to give any reason for rejecting a lay witness opinion was harmless. 674 F.3d at 1122. The case here, however, is distinguishable from *Molina*, where the ALJ ignored statements from the claimant's family members that merely repeated the limitations that the claimant herself described. Most saliently, Ms. Pangburn's work as a vocational rehabilitation counselor gives her a unique perspective on the challenges that Plaintiff would face in the workplace. Her testimony contextualizes Plaintiff's claimed limitations in a way that supporting family member statements do not, and the ALJ should have explained why he rejected Ms. Pangburn's testimony.

In addition, Ms. Pangburn's letter does not merely replicate Plaintiff's own testimony. Instead, the letter explains that Plaintiff would require long-term supports in the workplace, like a job coach. The need for a job coach is a specific limitation beyond what Plaintiff or other witnesses described. The record in this case is mixed; there is evidence that would support a finding of disability and other evidence that would support a finding of non-disability. Given this context, a reasonable ALJ fully crediting Ms. Pangburn's testimony could have reached a different disability determination. *See Stout v. Comm'r Soc. Sec. Admin.,* 454 F.3d 1050, 1056 (9th Cir. 2006); *Molina*, 674 F. 3d at 1115-16. The error was not "inconsequential to the ultimate disability determination," *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir.2008), and the case must be remanded to the agency to consider Ms. Pangburn's testimony.

**E.  Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A court may not award benefits punitively and must conduct a

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec.*

*Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether

the ALJ made a legal error and then reviews the record as a whole to determine whether the

record is fully developed, the record is free from conflicts and ambiguities, and there is any

useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Only if the record has been fully developed and there are no outstanding issues left to be

resolved does the district court consider whether the ALJ would be required to find the claimant

disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the

district court can exercise its discretion to remand for an award of benefits. *Id.* The district court

retains flexibility, however, and is not required to credit statements as true merely because the

ALJ made a legal error. *Id.* at 408.

This record is fully developed, but it is not free from conflicts and ambiguities. Although

certain evidence supports a finding of disability—Plaintiff's testimony, several lay witness

statements, and the opinions of Drs. LeBray and Benham—the ALJ found that some of this

evidence was undermined by other evidence, including Plaintiff's daily activities, her medical records, and her demeanor and presentation at the hearing. Thus, the ALJ would not be required to find Plaintiff disabled on remand, so further proceedings are appropriate. On remand, the ALJ must consider Ms. Pangburn's lay witness testimony, heeding Ms. Pangburn's relevant expertise in disability and vocational capacity. The ALJ should view this testimony alongside other evidence supporting Plaintiff's claim to be unable to work as he determines whether Plaintiff is disabled.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 16th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge